## No. 312.

### CHAFFE, POWELL & WEST VS. G. G. GILL ET AL.

The property of the debtor being the common pledge of his creditors, every act done by a debtor, with intent of depriving his creditor of the eventual right he has upon the property of such debtor, is illegal.   C. C. 1968.

Where one purchases property from a debtor whom he knows is insolvent, with notice that his object in selling it was to deprive his creditors of their recourse upon it, and such purchase operates to their injury, the sale will be annulled.

Chaffee, Powell & West vs. Gill et al.

The purchaser in bad faith will not be entitled to a restitution of the consideration unless he proves that it inured to the benefit of the creditors, by adding to the amount applicable to the payment of their debts. C. C. 1977.

APPEAL from the Third District Court, Parish of Claiborne. *Barksdale, J.*

*Boatner & Lamkin* and *McClendon & Seals* for Plaintiffs and Appellants.

*John Young, J. W. Holbert, J. A. Richardson* and *J. R. Phipps* for Defendants and Appellees.

The opinion of the court was delivered by

BREAUX, J.　Chaffe, Powell & West have brought this suit to recover $17,349.21 and interest. They allege that the defendant, George G. Gill, being in insolvent circumstances, with intent to defraud them, and other creditors, made fraudulent and simulated sales of all his tangible property.

That, under notarial act, he pretended to sell to George Gill, his nephew, his store and warehouse in the town of Homer, together with the stock of merchandise contained therein, and his open accounts for the year 1891, for the nominal price of $15,000 cash.

They pray that judgment be rendered against George G. Gill for the sum claimed; that the sale to George Gill be decreed fraudulent and simulated; the property described subjected to sale in satisfaction of the judgment prayed for; that there be personal judgment against George Gill for so much of the personal property sued for as he fails to surrender, in obedience to the judgment.

George G. Gill answered by a general denial of the facts alleged, and George Gill pleaded payment of the price in good faith, in due course of business.

The judge *a quo* maintained the sale of the movable property, and as to the immovable property, decreed its nullity, on plaintiffs' return of $5000, with 5 per cent. per annum interest, since date of purchase.

He pronounced judgment against George G. Gill for the amount due plaintiffs.

The record discloses that on the 17th day of February, 1891, the defendant, George G. Gill, desired an extension of his indebtedness,

and promised to secure it by a mortgage on his real estate in Claiborne parish. He represented himself to plaintiffs as worth $35,000 in excess of his liabilities.

He delivered to plaintiffs in New Orleans a written statement of the status of his affairs, in which he valued his assets in detail. The total of the statement was $81,000 assets and $46,000 liabilities.

He said he had undervalued, rather than overvalued, his assets, and that his brick store in Homer was worth more than $10,000, and that his stock of merchandise would invoice considerably more than $50,000.

That his accounts for 1891 amounted to $4000, and were good for the face value.

He promised that immediately after his return home he would make a statement containing a description of all the property he had promised to mortgage.

He, therefore, applied for an additional amount, to pay certain bills he owed, and desired to pay before returning to his home. They were paid by plaintiffs, amounting to $2181.43, as part of the new accommodation for the season of 1891–92, the defendant having promised the mortgage, as before mentioned.

Instead of complying, on the 23d day of February, 1891, he sold to George Gill his brick storehouse and a number of town lots, a warehouse, and other immovable property, also his stock of goods, office furniture, also all the accounts on the books dated in 1891, described in the deed of sale. The whole property was sold *in bloc* for the price of $15,000, cash in hand paid.

On the 25th of February, 1891, he made a dation *en paiement* to his wife of an improved lot, in satisfaction of $2000, and within a very short time sold all his remaining immovable property. Ten thousand dollars due Chaffe & Powell were secured by a mortgage on certain lands in the parish of Richland.

The lands were the property, at the time the mortgage was executed, of George Gill, who consented to this mortgage to secure an indebtedness of George G. Gill.

On the 24th day of February, 1891, these lands were sold by George Gill to George G. Gill for the price of $5000.

He, G. G. Gill, was insolvent when the sales were made, and they left him without any property subject to seizure.

Part of the $15,000, purchase price, was applied to the payment of

certain debts for which George Gill, the purchaser, was security, and part, viz., $5000, to the payment of the Richland tract of land.

George Gill was a creditor at the time of George G. Gill in the sum of $2000. This amount does not figure in any of the contracts.

The representations made by the defendant just prior to the sale, and the sudden transfer of all his property, can lead only to the conclusion that his object was to escape the payment of his debts or to give an unfair preference to some of his creditors.

Having reached this conclusion, the question at once suggests itself, Was the vendee, George Gill, a party to the act in *fraudem legis* by George G. Gill, and was he aware of his insolvency?

We have no direct testimony on the subject.

The fact that they were on intimate terms; that the nephew was almost daily in the uncle's office; that he knew of the arrangement to give plaintiff a mortgage; that he must have known that he was carrying a large indebtedness; that he was a creditor, and no mention was made of the claim at the time these sales were passed; that the sale to him was not in due course of business; that part of the price was applied to the payment of debts for which the vendee was security; that a large portion was applied to the payment of the Richland tract of land, and thereby returned into his possession shortly after this purchase; that two disinterested witnesses testify that these lands are not worth the amount for which they are mortgaged; that the contents of the commercial house were transferred on a memorandum estimate and not on an inventory, to be as exact as possible as to the value,—all point to an active participation on his part in a scheme to defeat certain creditors.

Defendant's witnesses on the subject testify that the intimacy did not extend to a knowledge of his uncle's business; that he was informed that his assets were large in comparison to his liability.

The vendee, at the time of his purchase, surely knew that the vendor would be unable to pay plaintiffs the large indebtedness for which he had promised to mortgage the property.

He must have known that, if the property transferred to him was not worth more than the estimate he placed upon it, the remainder, comparatively of little value, added to that transferred to him, was considerably less than the amount due by his co-defendant.

The evidence shows how much the whole property brought.

The total is less than $22,000.

67*

Chaffe, Powell & West vs. Gill et al.

He was informed by the vendor that his indebtedness amounted to $47,000.

We find no relief for the purchaser in Article 1982 of the Civil Code, as it is impossible legally to order a restitution to be made of any of the price paid to creditors.

At most the purchaser can be subrogated to whatever rights the creditors had against G. G. Gill.

All the property described in the deed of G. G. Gill, defendant, to his co-defendant, George Gill, before Drew Ferguson, clerk of court, on the 23d day of February, 1891, not included within the terms of the judgment appealed from, shall be included, or its value accounted for.

It is therefore ordered, adjudged and decreed that the judgment appealed from be amended by annulling and avoiding the said sale *in toto;* that all the property described in said deed be subjected to sale in satisfaction of the judgment.

The said George Gill is subrogated to the rights the creditors paid by him may have had against George G. Gill, and the judgment appealed from is further amended by not allowing the restitution of the amount therein granted.

As amended, judgment affirmed, at appellee's costs.

## ON APPLICATION FOR A REHEARING.

BREAUX, J. Plaintiffs in their application for a rehearing contend that in the event a revocatory action is sustained the purchaser should be placed in the same position as prior to the sale or transfer; that the attaching creditor should restore to the purchaser the amount thus expended by him and applied to the payment of G. G. Gill's creditors.

The article quoted in support of these propositions had not escaped our attention, and would have been applied had it not been that the amount is limited to "so much as he shall prove has inured to the benefit of the creditors by adding to the amount of property applicable to the payment of the debt." Art. 1982, R. C. C.

We did not find that any amount inured to the benefit of the creditor or creditors, that it is possible to give a superior or concurrent right to George Gill to recover the amount of the purchase price G. G. Gill applied to the payment of his debts.

We are referred to the case of Barker and another vs. Phillips, 11 R. 197.

In that case the price was paid to release the two attachments, which, if not released, would have necessarily occasioned a diminution of so much of the property subsequently attached.

The sum in that case inured to the benefit of the creditors, by being added to the amount of the property applicable to the payment of the debts in which all the attachments issued.

In the present case no such condition presents itself.

The judgment revoking the sale precludes a claim on the part of a creditor which has not inured to the benefit of the creditors having precedence.

We have carefully examined the grounds of the application of plaintiffs, but find no merit in them.

Rehearing refused.